UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE HUMPHREY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MAURICE HOWARD, *et al.*,<br><br>　　　　　　Defendants. | Case No.: 1:20-cv-00507-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT HOWARD'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 34) |

　　　　Plaintiff Shane Humphrey is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

　　　　Currently before the Court is Defendant Howard's motion for summary judgment, filed October 29, 2021.

**I.**

**RELEVANT BACKGROUND**

　　　　This action is proceeding against Defendant Maurice Howard and John Doe for violation of the First Amendment right to free exercise of religion.[1]

　　　　On September 17, 2020, Defendant Howard filed an answer to the complaint.

---

[1] Defendant John Doe has not been identified or served.

On October 19, 2020, the Court issued the discovery and scheduling order.

On October 29, 2021, Defendant Howard filed the instant motion for summary judgment. Plaintiff did not file an opposition and the time to do so has expired.[2]  Local Rule 230(l).  Accordingly, Defendant's motion is deemed submitted for review without oral argument.  Id.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).  It need only draw inferences, however, where there is "evidence in the record...from which a reasonable inference...may be drawn"; the court need not entertain

---

[2] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

inferences that are unsupported by fact. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986).  But, "if direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

### III.
### DISCUSSION

**A.     Summary of Plaintiff's Allegations**

On August 9, 2019, Plaintiff arrived at Kern Valley State Prison (KVSP) from Sacramento. Prior to his arrival, Plaintiff was approved for participation the Religious Diet Program established by the California Department of Corrections and Rehabilitation (CDCR).

On September 1, 2019, Plaintiff submitted a CDCR Form 22 request for interview seeking an explanation as to why he was not receiving his kosher meals.  Plaintiff had been at KVSP for nearly three weeks and was not provided a reason why his religious diet was not being accommodated.

On or about September 3, 2019, Plaintiff was transferred to Solano State Prison for unrelated criminal proceedings where he received his kosher meals without fail for a period of almost one month.

On or about October 3, 2019, Plaintiff received a response to his CDCR Form 22 request and Defendant Howard acknowledged his prior approval to participate in the religious diet program. However, Plaintiff continued to be denied his kosher meals.  Therefore, on or about October 17, 2019, Plaintiff submitted another CDCR Form 22 to the institutional Rabbi (John Doe) who failed to respond.

Without explanation, Plaintiff did begin to receive his kosher meals on occasion, mainly his dinner trays until he was against transferred to Solano State Prison on November 20, 2019, where he was provided the meals on a regular basis.  Plaintiff returned to KVSP in early December 2019, where he was again denied kosher meals without justification.

On December 22, 2019, Plaintiff submitted an inmate appeal requesting to receive his kosher meals which was granted on February 12, 2020, at the first level of review.  For a period of six

months, Plaintiff was either denied anything to eat or was forced to eat meals outside of his religious dietary custom.

**B.     Statement of Undisputed Facts[3]**

1.      Plaintiff was an inmate incarcerated by the California Department of Corrections and Rehabilitation (CDCR) and was housed at KVSP during the time period relevant to his allegations in this case.  (Pl. Dep. 16:17-11, 22:13-17.)

2.      Plaintiff claims that from August 2019 to February 2020, while he was housed at KVSP, he was not provided kosher meals, despite being approved to receive those kosher meals.  (Pl. Dep. 25:5-16, 26:13-19, 28:17-25, 40:21-41:2, 54:3-13.)

3.      Defendant Howard was the chaplain at KVSP at all times relevant to this case and was responsible for approving or denying inmate requests to be approved to receive kosher meals, as well as reviewing and responding to inmate grievances relating to religious dietary issues.  (Howard Decl. ¶¶ 1-2, 6; Pl. Dep. 25:21-24, 43:18-24, 76:10-77:2.)

4.      Defendant has no personal involvement in or authority over the preparation, distribution, or service of kosher meals to inmates at KVSP, and did not supervise food service, kitchen, or custody staff; instead, preparation, distribution, and service of kosher meals are handled exclusively by food service, kitchen, and custody staff.  (Howard Decl. ¶ 6, Pl. Dep. 27:8-22, 76:10-77:14.)

5.      In order to be approved to receive kosher meals, an inmate must demonstrate that he sincerely holds a religious belief that necessitates kosher meals, which generally involves submitting a religious diet program request form (CDCR 3030), meeting with the institution's chaplain to discuss his request, and signing a religious diet program agreement (CDCR 3030-A).  (Howard Decl. ¶¶ 2-3 & Ex. C; Pl. Dep. 24:13-21.)

6.      When an inmate is approved to receive kosher meals, the chaplain signs off on the

---

[3] Hereinafter referred to as "UF."

1  CDCR 3030 Form, which is then maintained in the inmate's central file, and the inmate's name is
2  added to a database of inmates who have been approved to receive kosher meals called the Inmate
3  Meal Tracking System (IMTS).  (Howard Decl. ¶¶ 4-5 & Exs. A and C; Pl. Dep. 24:13-21.)
4    7. Plaintiff was approved to receive kosher meals during the relevant time frame and
5  Defendant never disputed his approval to receive kosher meals.  (Howard Decl. ¶¶ 8, 10-11; Pl. Dep.
6  23:21-25:12, 55:3-9.)
7    8. On or about September 17, 2019, Defendant received an inmate request form from
8  Plaintiff in which Plaintiff claimed he was not receiving kosher meals.  (Howard Decl. ¶ 7 & Ex. B;
9  Pl. Dep. 49:10-50:7, 55:10-14, 58:20-59:1-60:10.)
10    9. Defendant located Plaintiff's CDCR 3030 and 3030-A forms and the IMTS entry for
11  Plaintiff, confirmed that Plaintiff was approved to receive kosher meals, and responded to Plaintiff,
12  indicating that Plaintiff was approved to receive kosher meals.  (Howard Decl. ¶¶ 8-9 & Exs. A and C;
13  Pl. Dep. 49:10-50:7, 55:10-14, 58:20-59:1-60:10.)
14    10. On or about November 19, 2019, Defendant received a request from custody staff to
15  verify that Plaintiff was approved for kosher meals.  (Howard Decl. ¶ 10 & Ex. C.)
16    11. Upon receiving the request, Defendant again confirmed that Plaintiff was on the
17  kosher-approved list, and then alerted food services, kitchen, and custody staff members to Plaintiff's
18  complaints so that any issues with reparation or distribution of Plaintiff's kosher meals could be
19  addressed, as Defendant did not have any involvement with or authority over the preparation and
20  service of kosher meals.  (Howard Decl. ¶ 10 & Ex. D; Pl. Dep. 64:4-9.)
21    12. Food service staff and the correctional food manager assured Defendant that this was a
22  new issue, and that they would address the issue with custody staff.  (Howard Decl. ¶ 10 & Ex. D; Pl.
23  Dep. 64:4-9.)
24    13. On or about January 28, 2020, Defendant was assigned to investigate Plaintiff's inmate
25  grievance log number KVSP-O-19-04777, in which he claimed that on two occasions following his
26  return to KVSP from court he was denied meals for several days afterwards.  (Howard Decl. ¶ 11 &
27  Ex. E.)
28    14. Defendant again verified that Plaintiff was listed as approved for kosher meals on the

5

1  IMTS and on February 4, 2020, interviewed Plaintiff in person, during which Plaintiff explained to
2  Defendant that he had begun receiving kosher meals.  (Howard Decl. ¶ 11 & Ex. E; Pl. Dep. 31:13-
3  32:23, 69:6-70:3.)

4       15.    Defendant partially granted Plaintiff's inmate grievance log KVSP-O-19-04777 in that
5  while Plaintiff was housed at KVSP he would receive kosher meals.  (Howard Decl. ¶ 11 & Ex. E; Pl.
6  Dep. 60:11-20.)

7       16.    Since interviewing Plaintiff on February 4, 2020, Defendant has not been made aware
8  of any complaints by Plaintiff, or any other information, that would indicate that Plaintiff has had any
9  more issues receiving kosher meals.  (Howard Decl. ¶¶ 11-12; Pl. Dep. 31:13-32:23, 69:6-70:3.)

### C. Analysis of Defendant's Motion

Defendant Howard argues that there is no evidence that any act or omission on his part caused Plaintiff not to receive kosher meals.

Prisoners do not forfeit all their constitutional protections simply because they are incarcerated. Bell v. Wolfish, 441 U.S. 520, 545 (1979); Shakur v. Schriro, 514 F.3d 878, 883–84 (9th Cir. 2008). Inmates retain the protections of the First Amendment to the United States Constitution, including its command that laws may not prohibit free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The United States Court of Appeals for the Ninth Circuit has held that the First Amendment extends to inmates' right to be provided with food that sustains good health and that satisfies the dietary commands of their faith. See Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). Denial of food complying with the tenants of inmates' faith may well substantially burden inmates' ability to practice their religion. See, e.g., McElyea, 833 F.3d at 198; Shakur, 514 F.3d at 885.

Lawful incarceration, however, permissibly brings with limitations of many rights and privileges, which is a circumstance justified by considerations underlying the penal system. See Shakur, 514 F.3d at 884. Prisoners' free exercise of religion is limited by institutional objectives and the confinement attendant to incarceration. Hartmann v. Cal. Dep't of Corrs. and Rehabilitation, 707 F.3d 114, 1122 (9th Cir. 2013); see also Turner v. Safley, 482 U.S. 78, 89 (1987) ("[W]hen a [a prison

official's conduct] impinges on inmates' constitutional rights, the [conduct] is valid if it is reasonably related to legitimate penological interests.").

To implicate the Free Exercise Clause of the First Amendment, prisoners must show that the belief at issue is both "sincerely held" and "rooted in religious belief." Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994); see Shakur, 514 F.3d 884-85 (reasoning finding that the sincerity test in Malik determines whether the Free Exercise Clause applies). If the inmate makes this initial showing, he must also establish that prison officials substantially burdened the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. Jones, 791 F.3d at 1031–32; Shakur, 514 F.3d at 884–85.  A substantial burden is more than an inconvenience to religious practice and must tend to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an inmate to alter his behavior and to violate his beliefs. Jones, 791 F.3d at 1031–32. A regulation or burden upon the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. See Shakur, 514 F.3d 884-85; see also Turner, 482 U.S. at 89.

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea, 833 F.2d at 198.  Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 of denial of the right to exercise religious practices and beliefs. See Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) (Jewish inmate claiming denial of kosher diet); McElyea, 833 F.2d at 198 (same); Moorish Science Temple, Inc. v. Smith, 693 F.2d 987, 990 (2d Cir. 1982) (Muslim inmate claiming denial of proper religious diet). The burden then falls on the prison officials to prove that the burden on plaintiff's exercise of religion was reasonably related to a legitimate penological objective. See Ashelman v. Wawrzaszek, 111 F.3d 674, 677-78 (9th Cir. 1997).

Here, it is undisputed that Defendant Howard was the chaplain at KVSP at all times relevant to this case and was responsible for approving or denying inmate requests to be approved to receive kosher meals, as well as reviewing and responding to inmate grievances relating to religious dietary issues.  (UF 3.)  Defendant has no personal involvement in or authority over the preparation,

distribution, or service of kosher meals to inmates at KVSP, and did not supervise food service, kitchen, or custody staff; instead, preparation, distribution, and service of kosher meals are handled exclusively by food service, kitchen, and custody staff. (UF 4.)

Plaintiff was approved to receive kosher meals during the relevant time frame and Defendant never disputed his approval to receive kosher meals. (UF 5.) On or about September 17, 2019, Defendant received an inmate request form from Plaintiff in which Plaintiff claimed he was not receiving kosher meals. (UF 6.) Defendant located Plaintiff's CDCR 3030 and 3030-A forms and the IMTS entry for Plaintiff, confirmed that Plaintiff was approved to receive kosher meals, and responded to Plaintiff, indicating that Plaintiff was approved to receive kosher meals. (UF 7.)

On or about November 19, 2019, Defendant received a request from custody staff to verify that Plaintiff was approved for kosher meals. (UF 8.) Upon receiving the request, Defendant again confirmed that Plaintiff was on the kosher-approved list, and then alerted food services, kitchen, and custody staff members to Plaintiff's complaints so that any issues with reparation or distribution of Plaintiff's kosher meals could be addressed, as Defendant did not have any involvement with or authority over the preparation and service of kosher meals. (UF 9.) Food service staff and the correctional food manager assured Defendant that this was a new issue, and that they would address the issue with custody staff. (UF 10.)

On or about January 28, 2020, Defendant was assigned to investigate Plaintiff's inmate grievance log number KVSP-O-19-04777, in which he claimed that on two occasions following his return to KVSP from court he was denied meals for several days afterwards. (UF 11.) Defendant again verified that Plaintiff was listed as approved for kosher meals on the IMTS and on February 4, 2020, interviewed Plaintiff in person, during which Plaintiff explained to Defendant that he had begun receiving kosher meals. (UF 12.) Defendant partially granted Plaintiff's inmate grievance log KVSP-O-19-04777 in that while Plaintiff was housed at KVSP he would receive kosher meals. (UF 13.) Since interviewing Plaintiff on February 4, 2020, Defendant has not been made aware of any complaints by Plaintiff, or any other information, that would indicate that Plaintiff has had any more issues receiving kosher meals. (UF 14.)

Plaintiff's First Amendment claim is grounded upon the premise that he was unconstitutionally denied him a kosher diet. But Plaintiff does not present evidence that Defendant Howard had any authority or involvement with the actual preparation or distribution of religious-diet meals to inmate. (UF 4.) Even construing Plaintiff's complaint liberally and drawing inferences in his favor, Plaintiff has not identified any evidence establishing a genuine dispute over whether Defendant had the authority to deny him kosher meals. To the contrary, the evidence indicates that Defendant had access to the IMTS and could verify whether the system accurately reflected whether specific inmates were approved to receive religious diet meals, he did not have any authority to order food service, kitchen, or custody staff to prepare or distribute religious diet meals in a particular way, nor did he have any control over the organizational systems in place to ensure that inmates were provided the appropriate meals. (UF 3-4.) As chaplain at KVSP, Defendant Howard was responsible only for approving or denying inmate requests to be approved to receive kosher meals, as well as reviewing and responding to inmate grievances relating to religious dietary issues. (UF 3.) Indeed, Plaintiff does not allege that Defendant Howard improperly denied his request to participate in the religious diet program, and the undisputed evidence clearly establishes that Plaintiff was approved to receive kosher meals during the relevant time frame at KVSP. Rather, Plaintiff's claim is centered on the actual day-to-day distribution of the religious meals themselves, which Defendant had not authority or control over. (See Pl. Dep. 25:10-14: "Even when I was first received here at Kern Valley, it was in my file. [Defendant Howard] never denied and said I wasn't kosher. It's just they were denying me the actual tray."). Thus, Defendant has not been sufficiently linked to any constitutional injury. Moreover, Plaintiff's claim that as chaplain Defendant is responsible for all aspects of the religious diet program is without merit because there is still no causal link between Defendant and the alleged constitutional violation. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

In addition, there is no evidence that Defendant disregarded Plaintiff's requests. To the contrary, Defendant Howard actively investigated to confirm that Plaintiff was correctly listed in the system as approved to receive a kosher meal and related Plaintiff's concerns to staff members who had authority and control over distribution of meals. (UF 8-15.) As previously stated, on September 17,

2019, Defendant received a written request from Plaintiff indicating that he was not receiving kosher meals. (UF 8.) Defendant reviewed Plaintiff's central file and found that Plaintiff was approved to receive kosher meals prior to arriving at KVSP. (UF 9.) Defendant also searched the IMTS and confirmed that Plaintiff that the database accurately reflected Plaintiff's approval for kosher meals. (Id.) Defendant thereafter informed Plaintiff in writing that he was approved to receive kosher meals. (Id.) Two months later, Defendant received a request from custody staff to verify that Plaintiff was approved for kosher meals. (UF 10.) Defendant confirmed that Plaintiff was approved and forwarded Plaintiff's concern to prison officials who had the authority to act upon it, namely, food service, kitchen, and custody staff members. (UF 11.) In response, a food service manager assured Defendant that this was a new issue and that it would be addressed with custody staff. (UF12.)

Lastly, on January 28, 2020, Defendant investigated a grievance by Plaintiff in which he claimed that he had not received kosher meals for several days after returning from court on two occasions. (UF 13.) Defendant confirmed again that Plaintiff was appropriately listed in the IMTS database and discussed the issue with Plaintiff in person. (UF 14.) During the interview, Plaintiff advised Defendant that he had begun receiving kosher meals, and after the February 4, 2020, there is no evidence that Plaintiff did not receive kosher meals or that he made any complaints about not receiving the meals. (UF 14-16.) There is simply no evidence that Defendant Howard denied or refused to provide Plaintiff with a religious diet. Rather, the undisputed evidence shows Defendant received Plaintiff's complaints, investigated, and informed the appropriate staff with authority and control over the distribution of kosher meals of Plaintiff's approval. The burden then shifts to Plaintiff to identify specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. at 324. However, Plaintiff has filed no opposition in response to Defendant's motion and has therefore failed to identify any evidence that precludes summary judgment. Accordingly, summary judgment is appropriate because there are no genuine issues of material facts with respect to the denial of kosher meals. Id. at 323.

**D.     Dismissal of Doe Defendant**

In screening and serving the complaint, the Court found that Plaintiff also stated a cognizable claim against John Doe, Facility Chaplain (Rabbi). (ECF No. 14.)

Although "the use of 'John Doe' to identify a defendant is not favored," Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), "where the identity of the alleged defendant is not known prior to the filing of a complaint, the plaintiff should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds," Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). The Court accorded Plaintiff this opportunity in its June 16, 2020 service order, explaining that Defendant Doe could not be served before being identified and noting that plaintiff could amend his complaint if the Defendant's identity was ascertained during discovery. (ECF No. 14, at 2 n.1.) The October 19, 2020 scheduling order provided that the parties could conduct discovery until June 19, 2021, subsequently extended to August 19, 2021. (ECF Nos. 26, 32.) Plaintiff has not moved to amend his complaint, moved to substitute a Defendant, or otherwise notified the Court of the identity of Defendant Doe.

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the Court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). This 90-day deadline under Rule 4(m) applies to service on unnamed defendants. See Bulgara v. Cty. of Stanislaus, No. 1:18-cv-00804-DAD-SAB, 2020 WL 5366306, at *5 (E.D. Cal. Sept. 8, 2020), report and recommendation adopted, No. 1:18-cv-00804-DAD-SAB (PS), 2021 WL 1105255 (E.D. Cal. Mar. 23, 2021) (dismissing action against "Doe defendants" for failure to serve within Rule 4(m)'s 90-day deadline). In this case, well over 90 days have elapsed since the filing of Plaintiff's first amended complaint on June 8, 2020. (ECF No. 13.) Plaintiff has therefore failed to serve the Defendant Doe in compliance with Rule 4(m).

In addition to Rule 4(m)'s requirements, "a court may dismiss a defendant, a claim[,] or an action based on a party's failure to prosecute an action[,] failure to obey a court order, or failure to comply with local rules." Bulgara, 2020 WL 5366306, at *5 (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of

complaint), Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for failure to prosecute and to comply with local rules)).  Plaintiff was warned that failure to identify and serve the Doe Defendant prior to the close of discovery would result in a recommendation that the claims against the Doe Defendant be dismissed. (ECF No. 14, at 2 n.1.)  Since discovery is now closed and Plaintiff has not moved to substitute Defendant Doe, it will be recommended that Defendant Doe be dismissed.

///

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Howard's motion for summary judgment be granted;
2. Judgment be entered in favor of Defendant Howard; and
3. Defendant Doe be dismissed from the action, without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 1, 2022**

UNITED STATES MAGISTRATE JUDGE